572 So.2d 1225 (1990)
R.J.D.
v.
The VAUGHAN CLINIC, P.C., et al.
89-631.
Supreme Court of Alabama.
December 7, 1990.
*1226 Donald R. Rhea of Rhea, Boyd & Rhea, and Roy Moore, Gadsden, for appellant.
Roger C. Foster and Robert G. Boliek, Jr., of McDaniel, Hall, Conerly & Lusk, Birmingham, for appellees Vaughan Clinic and Dr. Gary S. Grayson.
William T. Mills II and Keith J. Pflaum of Porterfield, Harper & Mills, Birmingham, for appellee Children's Hosp.
MADDOX, Justice.
This appeal involves the question whether a custodial parent has the right to have her 17-year-old minor child admitted into a private psychiatric hospital against the minor child's will and without her consent. The issue presented on appeal is whether a private physician and private hospital that admit and hold such a minor child against the child's will, but based on the request and consent of the custodial parent, can be held liable for either false imprisonment or for violating the minor's civil rights.

FACTS
Mr. D. and Mrs. D., parents of the plaintiff, R.J.D., were divorced in Marshall County, Alabama, in 1979. The court awarded the mother, Mrs. D., the care, custody, and control of R.J.D., then 12 years of age. R.J.D. lived with her mother in Birmingham, Alabama until certain events occurred that ultimately led to the subject controversy. On November 13, 1984, five years after she was awarded custody, Mrs. D. filed a complaint with the Family Court of Jefferson County alleging that R.J.D., then 17 years of age, had left home and was in need of supervision.
The Jefferson County Family Court held a hearing on the mother's petition, and granted custody of R.J.D. to her mother, who immediately had R.J.D. admitted into Children's Hospital. Although R.J.D. refused to consent to her admission, Dr. Gary Grayson, a psychiatrist employed with Vaughan Clinic[1] admitted R.J.D. into Children's Hospital, based on her mother's request and consent, and placed R.J.D. in the secure ward of the adolescent care unit. Two weeks later, on December 5, 1984, R.J.D.'s father smuggled her out.
On November 15, 1985, while still a minor, R.J.D., by and through her father, filed this action against Vaughan Clinic, Children's Hospital and Dr. Grayson, alleging medical malpractice, breach of contract, false imprisonment, and outrage, and seeking damages pursuant to 42 U.S.C. § 1983 for civil rights violations. On September 26, 1989, the trial court granted each defendant's motion for summary judgment as to R.J.D.'s claims based on false imprisonment, outrage, and civil rights violations, and certified the judgment as final pursuant to the provisions of Rule 54(b), A.R. Civ.P. R.J.D. appealed to this Court on January 17, 1990, but only as to her claims *1227 for false imprisonment and civil rights violations. R.J.D.'s medical malpractice and breach of contract claims are still pending in the trial court.
We must determine whether the trial court correctly entered summary judgment on the minor's false imprisonment and federal civil rights claims. To determine that, we initially must examine the underlying question of the legal right of a parent to determine what is in the best interest of a child regarding the necessity for psychiatric care.

I
We first address the question of the propriety of the defendants' summary judgment on the plaintiff's false imprisonment claim. As defined in Alabama, "[f]alse imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala.Code 1975, § 6-5-170.
It is undisputed that R.J.D. was admitted to Vaughan Clinic by Dr. Grayson against her will and without her consent; consequently, there is no dispute concerning the basic facts, the only dispute being over the right of a custodial parent to determine the medical needs of a 17-year-old unemancipated child regardless of the wishes of the child.
A child, like an adult, has a substantial liberty interest in not being confined unnecessarily for medical treatment, but Alabama has long recognized the principle that parents are, by the common law, under the legal duty of providing medical attention for their children. Ex parte University of South Alabama, 541 So.2d 535 (Ala.1989); Osborn v. Weatherford, 27 Ala.App. 258, 170 So. 95 (1936).
This Court has found no Alabama cases directly applicable to the facts in this case, and the legislature has not addressed the question of the legal rights of a child under the circumstances presented here, the voluntary admission of a minor child by a custodial parent to a psychiatric unit.[2] Consequently, absent alteration by the legislature, the common law is controlling. Ala.Code 1975, § 1-3-1.
The parents' common law duty to care for their children is widely recognized:
"It is ordinarily for the parent in the first instance to decide ... what is actually necessary for the protection and preservation of the life and health of his child, so long as he acts as a reasonable and ordinarily prudent parent would act in a like situation."
59 Am.Jur.2d Parent and Child § 48, at 193-94 (1987).
Alabama is among the many states that respect this common law duty. Ex parte University of South Alabama, supra. Thus, in order to address adequately R.J. D.'s false imprisonment claim, the Court must necessarily consider the common law duty and the right of parents to provide for the care and health of their children. Under the common law it is not the child's consent to such care that controls. Rather, it is the parents' common law right and duty to provide for the well-being of their children that prevail.
In Osborn, supra, the court acknowledged the parents' "obligation, natural, moral, and legal, to furnish the necessaries" for their minor children:
"`This duty is recognized and discharged even by the higher orders of the animal world, and it would seem to be prescribed as to the human father by the most elementary principles of civilization as well as of law.'"
Osborn, 27 Ala.App. at 259, 170 So. at 96 (quoting 20 R.C.L. par. 30, at 622).
The common law deems parental care for children not only an obligation, but also an inherent right:
"In such matters as deciding on the need for surgical or hospital treatment, the wishes of young children are not consulted, nor their consent asked when they are old enough to give expression thereto. The will of the parents *1228 is controlling, except in those extreme instances where the state takes over to rescue the child from parental neglect or to save its life. Similarly, the right to grant or refuse a medical examination of a child belongs not to the child, but to the parents."
59 Am.Jur.2d. Parent and Child § 48 at 194 (1987) (emphasis added).
The United States Supreme Court followed this common law rule in Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). In Parham, minor children receiving treatment in the Georgia state mental hospitals challenged the commitment procedures that allowed parents to commit their minor children without first obtaining their consent. The Supreme Court there aptly addressed the common law rights and duties of parents:
"Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course; our constitutional system long ago rejected any notion that a child is `the mere creature of the State' and, on the contrary, asserted that parents generally `have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.' Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925).... Surely, this includes a `high duty' to recognize symptoms of illness and to seek and follow medical advice. The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children....
"That some parents `may at times be acting against the interests of their children'... creates a basis for caution, but is hardly a reason to discard wholesale those pages of human experience that teach that parents generally do act in the child's best interest.... The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition."
442 U.S. at 602-603, 99 S.Ct. at 2504.
Although Parham involved the commitment of children to a state institution, the principle of law applied there would be the same when the commitment is voluntary and is to a private facility; therefore, the common law right and duty of parents to care for their children would apply to the facts in this case. The mere fact that R.J.D.'s mother decided to admit her into Children's Hospital without R.J.D.'s consent and against her will, would not automatically dictate the transfer of authority to make that decision from her mother to either R.J.D. or the State. There is no indication in the record that the action of R.J.D.'s mother would authorize a finding of neglect or abuse on the mother's part. Therefore, we hold that the authority and duty to care for R.J.D. rested solely with her mother, who had been given the care, custody, and control of R.J.D.
There are strong policy reasons for our holding. Parents are entrusted with providing for the best interest of their children. The law, in fact, authorizes both civil remedies and criminal penalties in cases of child neglect or child abuse. See Ala.Code 1975, §§ 13A-13-4 et seq., 26-14-1 et seq., 26-15-1 et seq., and 30-5-1 et seq. In order that parents may fulfill the duty the law places on them to provide for their children, the law allows them the authority to give the necessary consent for admitting their children into a health care facility. In view of the parental obligations to provide for the health care needs of children, and in view of the common law right of parents to exercise broad authority over their children, health care providers should be able to rely on a parent's consent when admitting a minor child into their care and should feel confident in relying upon that consent in detaining minor children for the purpose of treatment, for either physical or mental infirmities.
*1229 In view of these policy considerations and the principles of the common law, which we must apply, we hold that the trial court did not err in finding that none of the defendants "unlawfully detained" R.J.D. in treating her, because the evidence is clear that each defendant admitted R.J.D. and provided treatment for her in reliance upon her mother's consent. We hold, therefore, that, with respect to R.J.D.'s claim based on an alleged false imprisonment, the trial court properly entered summary judgment in favor of Vaughan Clinic, Children's Hospital, and Dr. Grayson.

II
R.J.D. also appeals from the summary judgment in favor of each defendant on her claim for damages pursuant to 42 U.S.C. § 1983 for civil rights violations. In order to state a prima facie claim under the provisions of § 1983, a plaintiff must allege 1) that the defendant's conduct caused a constitutional violation, and 2) that the challenged conduct was taken or committed "under color of state law." Arnold v. Board of Education of Escambia County, Alabama, 880 F.2d 305 (11th Cir.1989).
R.J.D. seeks to show state action by arguing that the actions of the defendants constituted, at least, "de facto state action." Her claim of a nexus is that Children's Hospital had an affiliation agreement with the University of Alabama at Birmingham, that there is no significant distinction between the commitment of an individual to a private or quasi-private institution and commitment to a public institution and that the constitutional implications are the same. R.J.D. argues that the State of Alabama "rigorously regulates juvenile commitment proceedings," citing Code of Ala.1975, § 12-15-90 et seq., which provides for the "involuntary commitment" of "any minor or child, as defined in [Chapter 15 of Title 12]," (see § 12-15-90(a)) and sets out the procedures that must be followed. But those provisions obviously apply only to commitments to state institutions, and not to a private institution, such as is involved in this case, for which the legislature has provided no such procedure. In this case, Dr. Grayson, a private physician with Vaughan Clinic, "admitted" R.J.D. into Children's Hospital, a private rather than a statehospital, with the full consent of her mother.
Additionally, the defendants' action does not come within the term "under color of state law." R.J.D.'s mother merely entered into a private contract with Dr. Grayson, of Vaughan Clinic and Children's Hospital, for her daughter's care. There is clearly state action when the State accepts responsibility for the "involuntary commitment" of minors to state hospitals under § 12-15-90, et seq. However, in order to find "state action," we would have to find a sufficient nexus between state law and the "voluntary admission" of a private patient into a private facility by a private physician. To establish a nexus sufficient for private action to come within the term "under color of state law," the plaintiff must show that the private party has "exercised powers that are traditionally the exclusive prerogative of the state." Blum v. Yaretsky, 457 U.S. 991, 1005, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). We cannot find that nexus here. Dr. Grayson's admission of R.J.D. into Children's Hospital, and the contract of Children's Hospital with R.J.D.'s mother for the care of R.J.D., are not exclusive state prerogatives. We find that R.J.D. failed to establish the required nexus sufficient to show that the defendants acted "under color of state law." Thus, the trial court correctly entered the summary judgment in favor of Vaughan Clinic, Children's Hospital, and Dr. Grayson as to R.J.D.'s claim based on an alleged violation of her civil rights.
Therefore, we affirm the summary judgment.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES and ADAMS, JJ., concur in part and dissent in part.
ADAMS, Justice (concurring in part; dissenting in part).
I respectfully dissent from that portion of the opinion affirming the summary judgment *1230 on the issue of false imprisonment. The majority holds, in effect, that a custodial parent has an absolute right to have a 17-year-old minor child admitted into a private psychiatric hospital against her will and without her consent. Such was not the law in this state, nor, to my knowledge, in any other state, until today. An understanding of the import of this decision requires a fuller exposition of the facts than has been provided to us by the majority.
While a student at Homewood High School in the fall of 1984, R.J.D. began associating with a man who was her senior by some seven years. Her mother attempted to stop the association. On November 17, 1984, allegedly to resolve the conflict with her mother, R.J.D. voluntarily entered Hillcrest Hospital for drug screening and underwent "psychotherapeutic" treatment and counselling under the supervision of Dr. S. David Morrison. On November 21, Hillcrest released R.J.D. with a recommendation of no medication and no follow-up.
On the day of her release, R.J.D. was escorted by Mrs. D. and her private investigators to Brookwood Hospital for an interview with another psychiatrist. Immediately after that interview, R.J.D. was escorted to the Jefferson County Family Court for a hearing on her need for psychiatric treatment. The court appointed Raymond Chambliss as R.J.D.'s guardian ad litem in the matter, and the hearing was held before a referee. At the conclusion of the hearing, the referee, also recommending no treatment, released R.J.D.
However, immediately after the hearing, Mrs. D. and her private investigators escorted R.J.D. to Children's Hospital. Dr. Gary Grayson, with knowledge of the proceedings just concluded in the family court, and over R.J.D.'s objections, admitted her for treatment. During her stay in Children's Hospital, R.J.D. was placed in a "secure ward," with restricted access to a telephone. R.J.D. alleges that when she asked how long she would have to remain at the hospital, she was told that she would stay as "long as someone was footing the bill."
Mr. Chambliss, the court-appointed guardian ad litem, visited the hospital and attempted to speak with R.J.D. However, hospital officials not only refused to allow him to speak with his client but also refused to supply him with any information concerning her status. On December 5, 1984, she escaped with her father through means of a ruse, and she later commenced this suit.
An action based on false imprisonment will lie whenever one is unwillingly subjected to a "restraint upon [his] freedom ... without proper legal authority." W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 11 (5th ed. 1984) (emphasis added). Thus, one who restrains another does so at his own peril. Id. The good faith of the defendant is not a defense to a false imprisonment claim where the restraint is eventually found to have been without sufficient authority. Id. See also Nesmith v. Alford, 318 F.2d 110 (5th Cir.1963), cert. denied, 375 U.S. 975 (1964); Daniels v. Milstead, 221 Ala. 353, 128 So. 447 (1930).
As a general rule, decisions regarding medical or psychiatric treatment of minor children are the responsibility of the parents. H. Clark, The Law of Domestic Relations in the United States § 9.3 (2d ed. 1988). Nevertheless, the "general principle is obviously not absolute even where the child is not capable of making a decision about his own treatment. It is limited by the power of the state to intercede for the protection of the child's health, safety or welfare." Id. (Emphasis added.) Indeed, the state, as parens patriae, holds an inherent and substantial interest in the welfare and protection of its minors. Through this interest, the authority of the state often supersedes that of all others, including that of the parents. See generally Areen, Intervention Between Parent and Child: A Reappraisal of the State's Role in Child Neglect and Abuse Cases, 63 Geo.L.J. 887 (1975). Examples of this power appear in litigation to determine custody and in cases involving allegations of child abuse and neglect. See Comment, When Rights Clash: The Conflict Between a Parent's Right to Free Exercise of Religion *1231 Versus His Child's Right to Life, 19 Cumb.L.Rev. 585, 586-87 n. 7 (1989) (jurisdictional survey of statutes defining the power of states vis-a-vis parents in matters pertaining to the health, welfare, and medical treatment of minors).
For these same reasons, Alabama requires the appointment of a guardian ad litem to represent a child defendant whenever, as in this case, the interests of the parent "conflict with those of the child." Ala.Code 1975, § 12-15-8(a); see also Ala. R.Civ.P. 17(c). Once the parens patriae power of the state has been invoked and a guardian ad litem has been duly appointed, no party may disregard the action of the state in the very matter that required the appointment. In other words, a child is "absolutely entitled to the benefits" of her guardian ad litem at all times pertinent to the proceedings for which the appointment was made. Ridgeway v. Strickling, 442 So.2d 106 (Ala.Civ.App.1983) (emphasis added); see also Citizens Walgreen Drug Agency, Inc. v. Gulf Ins. Co., 282 Ala. 648, 213 So.2d 814 (1968). This is a "non-waivable right ... of such magnitude that, upon appeal, the supreme court will take notice ex mero motu of the absence of a guardian ad litem for an infant defendant and will reverse the case on that account." Ridgeway, 442 So.2d at 109; see also Hall v. Hall, 280 Ala. 275, 192 So.2d 727 (1966); Doss v. Terry, 256 Ala. 218, 54 So.2d 451 (1951).
In this case, the largely undisputed facts reveal that R.J.D. was hurriedly ushered out of the courtroom and involuntarily admitted, despite the fact that a referee had just found no treatment to be necessary. Even more significantly, she was denied access to her guardian ad litem when he attempted to visit her in the hospital in connection with the matter of her need for treatment. Under Alabama law regarding the representation of minor defendants, neither Mrs. D. nor the defendants, acting at her behest, had the authority to place such restrictions on R.J.D. It appears that Mrs. D., in seeking a place in which to incarcerate her daughter, had, at last, found these defendants who were willing to serve as collaborators in R.J.D.'s improper restraint.
Summary judgment is proper only where it appears that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ala.R.Civ.P. 56(c) (emphasis added); see also Lolley v. Howell, 504 So.2d 253 (Ala.1987); Cantrell v. City Federal Sav. & Loan Ass'n, 496 So.2d 746 (Ala.1986). Under the facts of this case, the defendants are clearly not so entitled; therefore, I would reverse the judgment of the trial court.
At best, the majority opinion will stand merely as an aberration in Alabama law. At worst, it will encourage individuals in the position of these defendants to disregard the interest of this state in the health and welfare of its minors and to flout with impunity judicial authority and legal process. For these reasons, I respectfully dissent in part.
JONES, J., concurs.
NOTES
[1] Vaughan Clinic contractually provided psychiatric services to Children's Hospital.
[2] The State does, of course, set out the procedures for an involuntary commitment of a minor child to a State facility. Ala.Code 1975, § 12-15-90 et seq.